# Ogletree Deakins

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**

*Attorneys at Law*

599 Lexington Avenue, 17th Floor
New York, New York 10022
Telephone: 212.492.2500
Facsimile: 212.492.2501
www.ogletreedeakins.com

Robert M. Tucker
212.492.2510
robert.tucker@ogletree.com

September 6, 2023

**VIA ECF**
The Honorable Joan M. Azrack
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

   Re:  *Craig Logan, et al. v. Safety Kleen Systems, Inc., et al.*
       Case No. 2:22-cv-00868 (JMA) (SIL)

Dear Judge Azrack:

  We represent Defendants Safety-Kleen Systems, Inc. ("Safety-Kleen") and Clean Harbors Environmental Services, Inc. ("CHESI") (collectively, Safety-Kleen and CHESI are referred to herein as "Defendants") in the above-referenced action. On June 13, 2023, we notified the Court that the parties had reached a settlement in principle to fully resolve this action. The Court granted the parties' request to stay all proceedings in this matter while the parties memorialize their settlement in a written agreement and submit it for approval.

  In accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), the parties hereby submit their settlement agreement ("Agreement"), attached hereto as **Exhibit A**, for the Court's review and approval. For the reasons stated below, the Agreement constitutes a fair and reasonable settlement of Plaintiffs' Fair Labor Standards Act ("FLSA") claims.[1]

**I. Procedural History and Settlement Agreement Terms**

  On February 16, 2022, Plaintiffs, Craig Logan, Love Williams, Thomas Murphy, Kevin Miller, Andrew Tyson, Louis Wells, Clarence Fisher and Robert Reid "individually on behalf of themselves and all other similarly situated," commenced an action entitled *Craig Logan et al. v.*

---

[1] Plaintiffs also asserted wage and hour claims arising under the laws of New York, Pennsylvania and New Jersey. Although these claims are resolved in the Agreement, the parties do not require court approval for dismissal of non-FLSA claims under *Cheeks*. *See, e.g., Gallardo v. PS Chicken Inc.*, 285 F. Supp. 3d 549, 553 (E.D.N.Y. 2018); *Feliz v. Parkoff Operating Corp.*, 2018 WL 1581991, at *3 (S.D.N.Y. Mar. 27, 2018).

Atlanta ▪ Austin ▪ Berlin (Germany) ▪ Birmingham ▪ Boston ▪ Charleston ▪ Charlotte ▪ Chicago ▪ Cleveland ▪ Columbia ▪ Dallas ▪ Denver ▪ Detroit Metro ▪ Greenville
Houston ▪ Indianapolis ▪ Jackson ▪ Kansas City ▪ Las Vegas ▪ London (England) ▪ Los Angeles ▪ Memphis ▪ Mexico City (Mexico) ▪ Miami ▪ Milwaukee ▪ Minneapolis
Morristown ▪ Nashville ▪ New Orleans ▪ New York City ▪ Oklahoma City ▪ Orange County ▪ Paris (France) ▪ Philadelphia ▪ Phoenix ▪ Pittsburgh ▪ Portland ▪ Raleigh ▪ Richmond
St. Louis ▪ St. Thomas ▪ Sacramento ▪ San Antonio ▪ San Diego ▪ San Francisco ▪ Seattle ▪ Stamford ▪ Tampa ▪ Toronto (Canada) ▪ Torrance ▪ Tucson ▪ Washington

The Honorable Joan M. Azrack
September 6, 2023
Page 2

*Safety-Kleen Systems, Inc. et al.* by filing a complaint (and subsequently an amended complaint ("Complaint") on May 19, 2022) with the United States District Court for the Eastern District of New York, Case No. 22-cv-0868 ("Action"), alleging that Defendants: (i) failed to pay overtime in violation of the Fair Labor Standards Act ("FLSA") and applicable state laws of New York, New Jersey and Pennsylvania; (ii) failed to pay minimum wages in violation of the FLSA and applicable state laws of New York, New Jersey and Pennsylvania; (iii) failed to pay spread of hours pay in violation of the New York Labor Law ("NYLL"); (iv) failed to furnish proper wage notices and wage statements in violation of the NYLL and similar Pennsylvania and New Jersey laws. On June 2, 2022, Defendants timely filed an Answer to the Complaint denying all of the material allegations contained in the Complaint and asserting several defenses to the claims asserted therein.

Plaintiffs have not moved for certification of a collective action pursuant to Section 216(b) of the FLSA or class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP") and the Court has not otherwise certified a collective or class action pursuant to Section 216(b) or FRCP 23. However, on August 22, 2023, Robert Harrison and Ignatius McKnight filed consents to join the Action pursuant to Section 216(b) of the FLSA.

The parties agreed to resolve the matter for the sum of $62,000.00 ("Settlement Sum"), which will be distributed as follows:

| Settlement Recipient[2] | W-2[3] | 1099 | Total Sum |
|---|---|---|---|
| Craig Logan | $4,683.58 | $4,683.59 | $9,367.17 |
| Love Williams | $1,529.94 | $1,529.95 | $3,059.89 |
| Thomas Murphy | $125.00 | $125.00 | $250.00 |
| Kevin Miller | $125.00 | $125.00 | $250.00 |
| Andrew Tyson | $125.00 | $125.00 | $250.00 |

---

[2] Plaintiffs' counsel represents that the Plaintiffs' individual shares of the settlement represent their pro rata share of the total Settlement Sum as compared to their alleged damages. For three of plaintiffs, Thomas Murphy, Kevin Miller and Andrew Tyson, there were no records establishing that they worked household hazardous waste ("HHW") collection events as exempt employees (see below for additional details). Under the parties' settlement agreement, Messrs. Murphy, Miller and Tyson are each to receive $250 in consideration for their release of all FLSA claims against Defendants including those claims alleged in the Complaint.

[3] Pursuant to the Agreement, each Plaintiff's pro rata allocation will be equally divided and reported as alleged unpaid wages on a Form W-2 and alleged liquidated damages on a Form 1099.

The Honorable Joan M. Azrack
September 6, 2023
Page 3

| | | | |
|---|---|---|---|
| Louis Wells | $1,079.42 | $1,079.43 | $2,158.85 |
| Clarence Fisher | $2,656.24 | $2,656.25 | $5,312.49 |
| Robert Reid | $1,333.36 | $1,333.37 | $2,666.73 |
| Robert Harrison | $3,960.93 | $3,960.93 | $7,921.86 |
| Ignatius McKnight | $2,8881.50 | $2,888.51 | $5,763.01 |
| The Samuel Law Firm | N/A | $25,000.00 | $25,000.00 |

The Settlement Sum includes a payment of $25,000 to Plaintiffs' counsel for their fees and costs. The total amount of attorney fees and out-of-pocket litigation costs incurred to date are $26,951.67 and $402.00, respectively.

The Settlement Sum will be paid within thirty (30) days of the Court's approval of the settlement as fair and reasonable under *Cheeks* and dismissal of the case with prejudice. For the reasons described below, the parties respectfully submit that the settlement is fair and reasonable under the circumstances.

**II.     The Agreement is Fair and Reasonable**

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* (citation omitted). In evaluating the fairness of a proposed settlement of FLSA claims, courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012), which the Second Circuit has endorsed. *Fisher v. SD Protection Inc.*, 948 F.3d 593, 600 (2d Cir. 2020); *Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 413 (2d Cir. 2019).

The *Wolinsky* factors consider: (a) the plaintiff's range of possible recovery; (b) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (c) the seriousness of the litigation risks faced by the parties; (d) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (e) the possibility of fraud or collusion. *See Cortes v. Bronx Bar & Grill, LLC,* 2019 WL 6318430, at *1 (S.D.N.Y. Nov. 25, 2019) (Netburn, *J.*) (citing and applying *Wolinsky* factors); *Arrango v. Scotts Co., LLC*, 2019 WL 117466, at *2 (S.D.N.Y. Jan. 7, 2019) (citing *Wolinsky*). The parties submit that their settlement of Plaintiffs' FLSA claims is fair and reasonable based on an analysis of the *Wolinsky* factors. Although Defendants submit that the

settlement, including the Settlement Amount, is fair and reasonable, they do not take any position regarding the attorneys' fees or litigation expenses or the fairness or reasonableness of same.

### A. *Range of Possible Recovery*

Safety-Kleen operates a hazardous and non-hazardous waste handling, industrial cleaning, and oil collecting and recycling business. Each of the Plaintiffs are current or former Sales and Service Representatives ("SSR") of Safety-Kleen.

The gravamen of the Complaint is Plaintiffs' assertion that they were entitled to, but did not receive, premium overtime compensation for workweeks in which they worked in excess of 40 hours, including workweeks when they voluntarily worked household hazardous waste ("HHW") collection events.

Defendants contend that the Plaintiffs were exempt from overtime under the Motor Carrier Act ("MCA") exemption. An employee is exempt from overtime under the MCA exemption if (1) the employer's transportation of passengers or property by motor vehicle is under the jurisdiction of the Secretary of Transportation; (2) the employee in question is a driver, driver's helper, loader or mechanic; and (3) the employee engages "in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce." *See* 29 C.F.R. §§ 782.2(a)-(b)(2). All of these requirements are met here.

Waste products qualify as "property" under the Motor Carrier Act. *See, e.g. Raymond v. Mid-Bronx Haulage Corp,* 2017 WL 1251137 at *4-5 (S.D.N.Y. 2017); *Graham v. Town and Country Disposal of Western Missouri*, 865 F. Supp. 2d 952, 958-59 (W.D. MO. 2011). Moreover, SSRs drive heavy commercial vehicles with a gross vehicle weight rating well in excess of the 10,001 pound minimum that triggers Department of Transportation jurisdiction. The vehicles also qualify as for Department of Transportation jurisdiction because they are "placarded" to transport hazardous waste. *See, e.g., Albani vs. Coast 2 Coast, Inc.*, 444F. App'x 788, 799 (5th Cir. 2011).

Finally, all of the waste retrieved by SSRs is in the flow of interstate commerce. The Second Circuit has recognized that a purely intrastate carrier may meet the interstate commerce requirement of the MCA exemption "if the goods being transported within the borders of one State are involved in a 'practical continuity of movement' in the flow of interstate commerce." *Bilyou v. Dutchess Beer Dists., Inc.*, 300 F.3d 217, 223 (2d Cir. 2002) (quoting *Walling v. Jacksonville Paper Co*., 317 U.S. 564, 568 (1943)).

Whether intrastate transportation is involved "in the flow of interstate commerce" is in turn determined by reference to "the intention formed prior to shipment, pursuant to which the property is carried to a selected destination by a continuous or unified movement." *Project Hope v. M/V IBN SINA,* 250 F.3d 67, 74 (2d Cir. 2001) (internal quotation marks and citations omitted); *see also Atl. Coast Line R. Co. v. Standard Oil Co. of Kentucky,* 275 U.S. 257, 269 (1927) (determining continuity of transportation by examining whether the destination of the goods "is arranged for or fixed in the minds of the sellers"). Thus, when determining whether intrastate

shippers qualify for the MCA exemption, courts focus on whether the property's final destination was known at the time they were shipped. *Walling*, 317 U.S. at 568.

In this case, SSRs are responsible for retrieving containerized waste and solvents that are bound—from the moment of their retrieval—for processing or recycling at Safety-Kleen waste facilities outside of the state of acquisition. Therefore, the waste retrieved by SSRs was "in the flow of interstate commerce."

Because of the strengths of Defendants' MCA exemption defense, the Plaintiffs agreed for purposes of settlement to only seek overtime compensation for workweeks in which they worked HHW events. To assess what damages Plaintiffs would be entitled to recover if, despite the strength of the company's exemption defense, Plaintiffs were to prevail on their misclassification assertion, the parties estimated the amount of time Plaintiffs spent working at the HHW events then calculated an overtime premium, based on the Plaintiffs' compensation for the week, for any overtime hours that week. In the handful of instances in which the Plaintiffs asserted that they attended HHW events for which the company had no record, the parties negotiated over a reasonable number of alleged additional events claimed to be attended by the Plaintiffs and assigned a damages figure to those weeks using the same process as that described in the prior sentence. These negotiations resulted in the parties' agreement to a total combined amount of $37,000 in compensation to the group of ten plaintiffs herein.

The recovery here, which affords Plaintiffs close to full relief for those weeks in which they worked (or claimed to work) HHW events, is therefore highly reasonable. *See Gervacio v. ARJ Laundry Servs. Inc.*, 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019) (finding twenty percent of maximum recovery reasonable in light of circumstances); *Villanueva v. 179 Third Avenue Rest Inc.*, 2018 WL 4100479, at *2 (S.D.N.Y. Aug. 28, 2018) (finding "less than six percent of estimated maximum recovery" to be reasonable in light of the circumstances).

### B. *Avoiding Burdens and Potential Risks of Continued Litigation*

The settlement enables the parties to avoid the burdens and risks of continued litigation. Courts recognize that discovery, continued litigation, and eventual trial practice may "meaningfully decrease possible recovery for Plaintiff[s]." *Flores v. Mama Lombardi's of Holbrook, Inc.*, 2015 WL 2374515, at *5 (E.D.N.Y. May 18, 2015). If the parties had failed to reach a settlement, they would have engaged in extensive discovery, including depositions, as well as summary judgement practice. If the case was not resolved at summary judgment, the parties would have proceeded to either a single trial or multiple trials on the merits of Plaintiffs' claims. Even if Plaintiffs survived summary judgment, Plaintiffs faced a difficult challenge in recovering a greater judgment than the Settlement Sum given the strength of Defendants' MCA exemption defense. Plaintiffs understand that if they were to continue with the litigation they may not recover any damages much less the money offered in the settlement.

### C. *Arm's-Length Bargaining, No Fraud or Collusion, No Cheeks Admonishments*

The settlement is the product of arm's-length bargaining and is a reasonable, non-collusive resolution of the case. Settlement negotiations were protracted and concluded only after extensive

The Honorable Joan M. Azrack
September 6, 2023
Page 6

settlement discussions and exchanging information and records to establish and verify potential damages. There was no fraud or collusion here.

The Agreement does not contain any terms that would militate against the Court approving it. For instance, the release is limited to any wage and hour claims that Plaintiffs have or may have had against Defendants and does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *See Ezpino v. CDL Underground Specialists, Inc.*, 2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017) (citing *Cheeks,* 796 F.3d at 206); *Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015); *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 180-81 (S.D.N.Y. Mar. 30, 2015). Likewise, the Agreement does not contain a confidentiality or non-disparagement clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood*, 2015 WL 4111668, at *1 (citing *Lopez*, 96 F. Supp. 3d at 177-78); *also compare Ezpino*, 2017 WL 3037483, at *2-3 (citing *Cheeks,* 796 F.3d at 206) (approving settlement agreement where it did not "contain a confidentiality provision nor does it contain a non-disparagement clause"); *with Cortes*, 2019 WL 6318430, at *2-3 (declining to approve the settlement because it contained a broadly worded confidentiality provision, but stating that it would approve an amended settlement provided it contained a more narrowly crafted confidentiality provision).

### D. *The Requested Attorneys' Fees are Reasonable*

In addition to assessing the reasonableness of the settlement amount, courts since *Cheeks* have found that they "must also assess the reasonableness of any attorneys' fee award." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing *Wolinsky*, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in FLSA settlements, it is "to ensure that the interest of [p]laintiff's counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

The Second Circuit has recently emphasized that in most "run of the mill" FLSA cases, "it **does not make sense** to limit fees to 33% of the total settlement," *Fisher*, 948 F.3d at 603-604 (emphasis added). Here, counsel for plaintiffs incurred in excess of fifty hours of billable time during the course of this litigation, an amount the Plaintiffs believe is reasonable, especially in light of there being ten plaintiffs involved. Plaintiffs' counsel's contemporaneous billing records are attached hereto as **Exhibit B**. Additionally, Plaintiffs' counsel seeks reimbursement for its out-of-pocket litigation expenses, consisting of the initial filing fee. Plaintiffs' counsel's expense report reflecting this cost is included as part of **Exhibit B**.

The requested amount of $25,000 for attorneys' fees and costs is reasonable. Although Plaintiffs incurred a combined $27,353.67 in fees and costs, counsel for Plaintiffs have agreed to accept less, $25,000,00, in full satisfaction of their fees and costs. Moreover, this agreed-upon $25,000 sum had no impact on the Plaintiffs' recovery, which as explained above was a full recovery for weeks in which they worked HHW events. The agreed-upon amount was negotiated separately from the payments for Plaintiffs and only after the parties had reached agreement on

those payments.  For these reasons, Plaintiffs' counsel requests for $25,000 in fees and costs, per the parties' Agreement.

### III.     Conclusion

For the foregoing reasons, the parties respectfully request that the Court approve the settlement of Plaintiffs' FLSA claims on the terms set forth in the Agreement and dismiss this matter with prejudice.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

*/s/ Robert M. Tucker*

Robert M. Tucker

cc:     Michael Samuel, Esq.
        *Counsel for Plaintiffs*